Are you ready to proceed? Yes, ma'am. This is Garman, this is Burke, this is Kilbright, this is Freeman, this is Thomas, this is Carmine, and Justice Thies. And I shouldn't be forgetting Thomas. Ladies and gentlemen, your honors, this case... You need to identify yourself. I apologize. My name is Thomas Jones, and I represent the Union Pacific Railroad, the defendant appellant in this case. This case arises out of a federal Employers Liability Act case that was tried in St. Clair County. And the jury returned a verdict in favor of Union Pacific Railroad and against the plan Christopher Ward. And the Fifth District Appellate Court reversed the judgment of the circuit court and the jury's decision in the case. And they did so on the basis that they believed that Union Pacific Railroad, in an F.E.L.A. case, or any railroad for that matter, is not entitled to defend themselves by defending that some other person, a third party, was the sole cause of the accident. Briefly, the underlying facts of this case is back in August of 2008, Christopher Wardwell, an employee of Union Pacific Railroad, along with some of his co-employees, were being transported by an outside contractor to transport them to a location where they were going to pick up a train. Union Pacific Railroad is not disputing that the conduct of the independent contractor is our conduct. Because actually, under the F.E.L.A., we have a non-delegable due. So that's not an issue in the case. So what happens is the driver of the van is driving the vehicle south on Route 3 around Columbia, Illinois. And as she's driving, and these are uncontradicted facts, as she's driving 50 miles an hour, properly in her lane of traffic, she is rear-ended by a drunk driver, a mis-banking. And the drunk driver, uncontradicted by a plaintiff's own expert, had to have been driving in excess of the speed limit somewhere between 10 to 15 miles per hour minimum over the speed limit. So somewhere between 60 to 65 miles an hour. The impact that occurred in this case was a direct impact square in the back, which is proven by the damages. And as a result of that impact, Mr. Wardwell claimed that he sustained a back injury. Now, the defense in the case, first of all, we don't believe that the plaintiff even made it a submissible case of liability to submit this to the jury. But be that as it may, the trial judge felt that the plaintiff had a submissible case, so he gave it to the jury and properly instructed the jury on the Federal Employer's Liability Act law. The instructions that were given in this case were primarily standard Federal Employer's Liability I.P.I. instructions that have been approved by this court. One of the instructions, and the instruction which the plaintiff primarily is complaining about, is I.P.I. 12.04. The plaintiff tendered that instruction, but the plaintiff tendered the instruction without the second paragraph. So we tendered that instruction, including the second paragraph. But let me point out, because this is a Federal Employer's Liability Act case, that instruction was modified as the plaintiff requested it to be modified. The words, proximate cause, do not appear in that instruction. Because the U.S. Supreme Court, and many courts since then, have ruled that the plaintiff in an FEOA case is required, first of all, obviously, to prove negligence. But they are not required to prove proximate cause. They are required to prove a cause in whole or in part. Is that the general standard of causation under FEOA? It is. Was the jury instructed on that? They were.  The instruction, I believe it's plaintiff's 26th, is the FEOA instruction that says that. And then it's defendant's instruction, I think, 4, where we give 12.04. Two instructions were given to the jury, which specifically told the jury that in order for the plaintiff to prevail, they have to prove negligence. And they have to prove negligence that cause in whole or in part the plaintiff's injury. So, IPI 12.04, the contested instruction that the court gave in this case, removed the words proximate cause and gave the instruction cause in whole or in part. But what the plaintiff complains about is the second paragraph of that instruction, which says if you find, based upon the evidence, that the sole cause of the accident was the conduct of some third party, then you return a verdict for Union Pacific Railroad. It doesn't say Union Pacific Railroad. And so that is what the plaintiff is complaining about. And the plaintiff in the Fifth District Appellate Court says that as long, and this is, I never understood the appellate court's opinion in this case, but the most I can make out of it is that the Fifth District is saying as long as the plaintiff comes forward with some evidence of negligence, not that the evidence that convinced the jury, but just that if they came forward with some evidence, then a defendant, railroad, has no ability to defend themselves. They can't point to some other party as being the sole cause of the accident. And not only does that fly in the face of the U.S. Supreme Court, but multiple courts since then. As a matter of fact, this decision of the Fifth District Appellate Court, there's not a single opinion that the plaintiff has been able to cite to you in any of the briefing that supports that interpretation. And just so you understand why it was proper to give that instruction, I want to talk to you just briefly a little bit more about the facts. As I told you before, I don't even believe the plaintiff made a submissible case. What the evidence in the case establishes is that Ms. Bankton, the drunk driver, she worked at a tavern in downtown St. Louis. She went out to work after work and did some drinking with some friends. Then they went across the river into Illinois to a tavern that's well-known in southern Illinois because it stays open late. It's Pops, and it's located in Sauget, Illinois. And she consumed more alcohol. Shortly before this accident occurs, she testified in this case that although she doesn't remember a lot of the details of what transpired after she left the tavern, her intention was to go home in Swansea, Illinois. But she recalls distinctly as she pulls out of Pops' tavern, she turns right for a south and proceeds south with the intention of getting on Interstate 255. And the reason this is important, ladies and gentlemen, is the fact that when she makes that turn to go south of 255, she's going in the direction of where this accident occurs. And the plainest theory in this case, although there was absolutely no witness that ever supported this, was that the van driver that's transporting Mr. Wardwell cut off, by moving into another lane of traffic, cut off the vehicle that the drunk driver mistakenly was driving. And where this occurs is down where one would come across Interstate 255 northbound or eastbound, and if you were to exit to go to Columbia, that lane comes in and meets with Route 3, whereas Mr. Wardwell was riding in the van by a van driver who was going southbound on 255 and turns off onto Route 3. And the theory that they put forth in this case is that when the van driver switched lanes, and there is dispute as far as how long it was that she was in the inside lane before she moved over, that she moved over into the lane and cut off Ms. Bankman. If you follow the evidence in this case, and we have actually in the case, we have exhibits that show that path, that exact path that would take Ms. Bankman, the drunk driver, to this location. If she takes that path, she is not ever, when she moves over, she's actually in the same lane of traffic as our van. And when she moves over, she's moving over, she has to move over because that exit is a single lane exit. So she actually has to move over behind our van. And Ms. Bankman testified, she wasn't sure whether it was the alcohol or she passed out, but she has no recollection whatsoever of the exit. She has no recollection of the fact why she was in that location. As a matter of fact, she says once this accident occurs, she finds out that she's down in Columbia, that's the opposite direction in which she lives, which is actually north of there in Swansea. And so she's surprised by this. So, at the scene, Mr. Wardwell and all the other occupants of the van not only make reports to the investigating police officer, but they make written reports and there's an accident report that Mr. Wardwell filled out, which is part of the evidence in this case, that asks for what the cause of the accident was. And everybody that was in that van agreed that the cause of the accident was the drunk driver who rear-ends the vehicle. There is no evidence whatsoever in any of those reports, the police officer or any investigation from the police officer, that suggested that the investigating police thought, excuse me, that this van switched lanes and cut off Ms. Bankman, the drunk driver. Where this all comes from, and we objected to the testimony, but Judge Loveno, the trial judge, permitted the plaintiff to put forth an expert witness who came in, and that was the expert witness's theory that this, based on him going down to this scene long after this accident, doesn't do an accident reconstruction. He admits he doesn't do an accident reconstruction. He does some measurements, and he concludes for this accident to have occurred that that's what happened. Now, the jury heard all that, and so even though we don't believe that the plaintiff even made a submissible case, the trial judge, Judge Loveno, gave the jury, allowed the plaintiff to present his theory, and the jury, after being properly instructed on the law, there is nothing wrong with those instructions. Their instructions are totally proper for an FBLA case. The jury returned a verdict for Union Pacific Railroad. So the jury obviously concluded that Union Pacific Railroad was neither negligent or that their negligence was a cause, in whole or in part, in the cause of this accident. And the appellate court's decision in this case is basically not superseding a case that was tried and where the jury was properly instructed on the law. The plaintiff cites in their brief, and I'm going to just talk a little bit about the cases that they cite. The cases that they cite, and we've discussed it in our brief, so I'm sure you've read that, but the plaintiff cites cases for the proposition that in a railroad case, a railroad cannot, if they're at fault in the cause of the accident, they cannot apportion and they're liable for the entire amount of the damages. There was never, there was never in this case ever any instructions nor any attempt to apportion any fault. The whole defense in the case was, ladies and gentlemen of the jury, the cause, the sole cause of this accident was the conduct of misthinking. And there was ample evidence in this case that that was exactly what occurred in this case. So not only was there those proper instructions given, there was a proper basis for giving those instructions. But yet the 5th District Appellate Court Judge Goldenherz in his opinion says, well, and they cite to the fact that the plaintiff presented some evidence of negligence on the part of the Union Pacific, the jury rejected that. As the jury, if we submit a case to the jury, and by the way, under the FDLA, both parties have the right to jury trial, and although some of the cases you will see, even the U.S. Supreme Court, even when a jury found in favor of the plaintiff, the appellate court reversed because after they looked at the evidence, there wasn't any legal duty that was breached by the defendant and they set it aside. But every case that the plaintiff cites to in this case dealing with their supposed argument that Union Pacific doesn't have the right to submit a sole cause are cases that dealing with a defendant who is liable, who is found liable by a jury, and is asking for an apportionment, which was never done in this case. Every case that the plaintiff cites to, in fact some of the cases we cite to, are cases where a jury found in favor of the plaintiff with a sole cause instruction, and those cases have been approved by the courts in the state of Illinois and other courts. That a defendant in an FDLA case, just because the causation standard is different, in cause in whole or in part instead of proxy cause, it doesn't deny a railroad the opportunity to defend sole cause. As a matter of fact, the cases are over and over again saying it's not even really an affirmative defense. It's the plaintiff's obligation, it's their burden of proof in an FDLA case, just like it is in most common law cases. Mr. Jones, it seems like you've been arguing from the standpoint of the jury instruction, and rightfully so, but it would seem like on remand, there were two motions in limine filed by the plaintiff, right? There were. That you could not even put forth evidence of sole proximate cause. That's what they asked for, the judge rejected it. Right, but the appellate court has indicated in this case that they've already found that there is some evidence. I'm just talking about the appellate court now. Some evidence of fault with respect to the railroad that do you expect if we affirm in this case, the new trial would grant the motion in limine based on the appellate court order? I think the trial court is basically going to have to follow whatever those directives are of the fifth district. Obviously, we do not believe that you should affirm, we believe you should reverse the appellate court order. I understand that, I understand that. I'm just saying that I'm wondering if... The important thing is, no appellate court has the right to make a finding that because there's evidence of negligence, that that's grounds for reversing a jury order. I'm not contesting the issue, I was just looking at the procedural posture of the case. I see your time is up. Thank you. Good morning, your honors, and may it please this court. My name is Mark DuPont, and I represent Christopher Wardwell, who was the plaintiff at the trial below, and is the appellate here before you. Mr. DuPont, since I was finishing up there with Mr. Jones, can I ask you, in a similar way, it's one thing to say that the railroad is responsible even if it's partially at fault for the accident, and I think Mr. Jones would agree with that, but isn't it quite another thing to say that even if there's the slightest evidence from which the jury could infer negligence on the part of the railroad, that the jury has to be precluded from even hearing evidence that another party was solely responsible? Yeah, that's exactly right. You can't put on evidence of a third party's negligence in an appeal late case. The Fifth District had it right, your honor. So you're saying it is quite a different issue, but you're saying that that is a correct proposition in the law? I apologize, I misunderstood you. Well, I'll repeat it again. I said that it's one thing to say that the railroad is responsible if it's partially at fault. Correct. It's another thing to say, as I believe the appellate court did here, that even if there's the slightest evidence from which the jury could infer negligence on the part of the railroad, that the jury has to be precluded from even hearing evidence that another party was solely responsible. No, I think they're two different things. I hear you now. I apologize.  They're completely two different things, your honor. Number one, you're saying that because the standard is in an appeal late case whether or not the railroad was at fault, in whole or in part, even the slightest. That's what all the cases say. But the Fifth District had it right when they said that once we put on evidence of the railroad's negligence, a railroad employer is precluded from asserting the negligence of a third party as the sole cause affirmative defense to an employee's appeal late case. That's exactly the right decision. And the reason it is, your honor, is because there's a very, very distinction. When you look at cases that talk about a plaintiff's failure to produce or adduce at trial evidence of negligence versus a case where the plaintiff produces evidence at trial or adduces evidence at trial, and then the railroad wants to come in and say, oh, by the way, folks, we're not really at fault here. It's the third party. Those are two different sets of facts. And the cases that the railroad relies upon go strictly to the first one. If you look at the Inman case, the Supreme Court case that they rely upon in its prodigy, that was not a case of anything other than the fact that the Supreme Court said the plaintiff failed to produce any evidence at all at trial. It was absolutely disreputable. In that circumstance, the plaintiff can't get by a motion for directed verdict. It doesn't have any – the defendant doesn't have to put on anything. That's true. But in the Inman case, the court said, no, there was evidence that they failed to produce a sufficient – I'm sorry, that there was evidence that the railroad failed to provide a safe place of work. It went up on appeal, and the court looked at it and said, no, that's not enough evidence. And then when it went to the Supreme Court, the United States Supreme Court said, no, there's a lack of evidence. That's all Inman in the cases that follow it say. The plaintiff failed to produce evidence of negligence. They do not say at all that a railroad is entitled to a sole cause affirmative defense based on the negligence of the third party. They do not say that the railroad is entitled to a jury instruction to exonerate its own evidence of negligence based on the third party. But in Inman, the fact finder found no evidence of the railroad's negligence, but that's precisely what the jury found here. No, because the court below, the trial court, gave the railroad the opportunity to sit there and argue it's their fault, we're not at fault. Now you're putting in – there's a complete difference, Your Honor, between saying lack of evidence, you didn't make your case, and yes, there's some evidence, but we disregard that evidence, and we're going to put the blame all on the railroad. That is 100%. The railroad comes up here and they say there's no apportionment of damages, but there is apportionment, because apportionment by its very legal term says you look at a single event, and then you divide it between the potential court users. So what you're looking at is who's potentially at fault, and all they're saying in an apportionment argument is simply that it's 100% to them. But the Supreme Court in errors, the AYERS case, said in no uncertain terms that the issue is – the only issue is that they are supposed to look at whether or not the railroad was at fault. You are not entitled to look at whether a third party is at fault, and there's a huge difference when you try a case when you sit there and simply say you didn't produce enough evidence versus it's these guys over here that did it. Forget our evidence. And that's what those jury instructions in this case did, Your Honor. It gave them the opportunity to sit there and point the finger to which they're not entitled to do. Well, here the railroad was found not to be negligent, period. No. The problem is, Your Honor, is that yes, they got the verdict in their favor, but there was not – see, it's not the same when you sit there and say, give me a jury instruction that says whether it's the railroad negligent or not versus an instruction that says if you think somebody else was solely at fault, then you can go ahead and fine it against the railroad. AYERS says this, Mr. DuPont. It says, under the FELA, an employee who suffers an injury caused in whole or in part by a railroad's negligence may recover his or her full damages from the railroad regardless of whether the injury was caused in part by the actions of the third party. So, as I said, it requires that the railroad be adjudicated negligent with respect to a given injury. And here the railroad was found not to be negligent. The jury's verdict showed that it didn't find the negligence on the railroad contributed at all to the injury. Your Honor, if you look at AYERS and you continue on in that language, what the court in AYERS said, among the innovations, the Act expressly directs apportionment of responsibility between the employer and the employee based on comparative fault. The statute expressly prescribes no other apportionment. It would be particularly curious for Congress to refer expressly to the established principles of comparative negligence, yet say not a word about adopting a new rule limiting the liability of a railroad on the basis of another party's fault. And if you look at all these cases, including the cases they cite, the court is very specific and it says you cannot point to the third party and try to put blame on them. That's what happened here, and when you allow that to happen in a court, in a trial, then they can come back and say, yes, the railroad wasn't at fault because we think the other party was at fault. It's sort of like the old days of proximate cause, and I think I have enough gray hair to talk about that. When you talk about proximate cause, you can still have the plaintiff, I'm sorry, one of the defendants negligent, but what you're saying is there's something else that comes in place, and that is why we're going to go ahead and intervene in Act, subsequent Act, proximate Act, whatever you want to call it, and now we're going to say that that party's at fault. The finding of the sole cause does not say when you allow them to point the finger at trial. And when you give an instruction that says if you believe that one party is at fault, that is not the same, I'm sorry, Your Honor, as simply saying that the jury found the railroad not at fault. What they did was they found the other party at fault. And it's a legal, it's a theory, and it goes sort of like the whole idea of an affirmative defense. If you look at it. Give me one public policy reason why the jury should be precluded in a case like this from hearing evidence that another party was solely responsible for the accident. One public policy reason. Absolutely. I know you're probably not covered by state workers' comp, I don't know, are you? I assume you're not. I assume some of your staff knows. I hope we don't have to find out. Well, I just hope you don't have to find out, too. But let's assume some of your staff is. You want your public policy. Here it is. Your staff goes out, and somebody runs a red light who's drunk, put in the facts of this case, and hurt somebody badly on your staff. Public policy of a workers' comp state in this state is that they're going to assign the employer, who had absolutely nothing to do with that, the responsibility to make sure they cover an employee like that. And that's exactly what the Supreme Court has said in all the cases. We've tried a number of cases. They said we're going to take as a public policy, Your Honor, and we're going to go ahead and sit there and say that someone has to bear the responsibility for this. The railroad is in a better position to do that. And, therefore, like a workers' compensation case where the employer really doesn't have any fault and there is no workers' comp for railroad employees, who do we put the burden on? And that's the public policy. I hope that that answers your question. But that is why we have workers' comp in this state. That's why the railroad has this law. But the law is clear. Workers' comp is non-fault, right? Right. But here we've spoken about the language of, in part, whether or not the employer was at fault, in part, so that there's some element of fault that is lurking here. It's not exactly the same public policy as workers' comp. I didn't mean it to be the same. I thought His Honor had asked me why is there a public policy? Give him a public policy. And I think the Supreme Court. And I think we're kind of agreeing with what the courts have said in workers' comp situations. It has been a public policy through legislation to put the burden, the risk of harm and the burden of paying for injuries on the employer. It's a choice. But you seem to be extending that and saying that FELA goes beyond that and says that, or let me put it the other way, that you're ignoring the part that FELA does have some obligation for the plaintiff to show some fault on the part of the defendant, in part at least, where that's not true in workers' comp. Yes. Tell us, again, what is the public policy here where a drunk driver is involved in a case, strikes a car, and why should not there be some reviewing of whether or not this particular defendant is in part at fault? Why is that a good public policy? Well, first of all, if you read the McBride case, which is the United States Supreme Court, they do set forth that public policy, Your Honor, on the public policy that I just said, that if you have to look at how the burden is placed on railroads versus other entities, that Congress in 1906 felt that that burden should be placed on the railroad. There's a long discussion in the McBride case about public policy and why the railroad should bear the burden. Now, the question that comes up is, yes, we still do have to prove some negligence, and we did in this case. What counsel failed to do, and I think it's in my brief, and it is definitely in the Fifth District's opinion, is that we have a case involving a professional driver, Ms. Goodwin. This is not mom and dad going out on a Sunday afternoon for a drive. This is a professional driver who's trained and has rules that she testified she has to comply with. Two of those rules require her to look over her shoulder and to look in her rearview mirror. She failed to do either one. She admitted that. She got rear-ended by a drunk, somebody in a taxi. It could have been Mario Andretti driving the car. She cut off the driver when she changed lanes, Your Honor. That's what the evidence was. She was in the left-hand lane. She had no reason to change lanes to the right-hand lane. She instead changed lanes to the right-hand lane, which we put on Dr. Schmidt, and Dr. Schmidt ran the calculations using her testimony, not other people's testimony, to get the total length of time that she could have been in the right-hand lane before she was hit. And that came to three-quarters of a second to four seconds. And I asked Ms. Goodwin if, in fact, that were the timelines. Would that indicate you cut off the other driver? And she said yes. So there is fault. This isn't just. But, Mr. DuPont, the jury rejected that. Because they got to take in the argument that they can point to the third party. So it is your position, then, that once the plaintiff puts on any evidence of negligence, that the defendant cannot put on any evidence of an alternative theory about how this event occurred? No. No? No. No, my theory is so unclear. My theory is once we put – it's not a theory. It's the case law, and I apologize for getting going on this, but I always feel like I'm running out of time all the time. The case law is clear, Your Honor. Once the plaintiff establishes some negligence on the part of the railroad, the railroad is not, at that point, entitled to point to the negligence of the third party as an affirmative defense. But isn't the issue of establishing negligence one that the jury determines, not whether you have believed you put some evidence on? True. They will ultimately have to make that decision. But you have to put it in the right context. And shouldn't they hear the entire story, what happened? No. Oh. No, and here's why. And I apologize. I didn't mean to cut you off, Your Honor. Well, I was just going to say, I mean, Mr. Jones is going to get up here and talk about why your evidence is no evidence at all and that the fault lies with the drunk driver, the intoxicated driver, solely, right? Now, we're listening to it now. I'm listening to both sides of the story. And it really is perplexing to me that the jury, the fact finder, shouldn't be able to hear a direct cross-examination and then assert whether they agree with your position, that there was some negligence on the part of the professional driver, in this case the railroad, or solely the cause of the accident was based on what happened with the drunk driver. I understand. And I just don't see anything in the law that indicates that the fact finder shouldn't be able to make that determination. If you read the F.E.L.A. and you read every Supreme Court case, including Inman, the court is very specific. The court says the sole line of inquiry is whether or not the railroad was at fault, in whole or in part, even the slightest. That is the sole line of inquiry. As soon as you allow them to point to the third party, you've changed that line of inquiry. And, Your Honor, you had asked about hearing the whole story. Take a look at Palmer. I know I've got three minutes. I could go on for this for all day, but I know you have Palmer. You've got three minutes. That's my all day. In Palmer, a quick example, then I want to tell you how it should have been done and worked well. In Palmer, you have three Union Pacific vehicles going down this two-lane road. You have a logging truck behind them, and then you have an inpatient driver behind them. The inpatient driver tries to pass. The Union Pacific truck takes a left-hand turn because they finally figured out where they were at, and you have a collision. The court permitted those facts to come into the case. But then what they said was, under FILA, the sole line of inquiry is whether or not the railroad was at fault. So you don't get to get to consider whether or not the third party was at fault, and you sure as heck, legal term, do not get to go ahead and get a jury instruction that says sole cause. In this case, in Wardwell, the court could have put on the evidence of the scene, put on the measurements, put on the fact that where Goodwin came from, and we believe there is evidence, Your Honor, from the drunk driver's statement to the police that she came off the other ramp. You could put on the evidence that it was hit from behind by another car. You could put on the evidence that she failed to look in the amount of time. But you sure as heck don't have to put on the fact that she had been working as a cocktail waitress that night, that she had been out drinking, that she had been out, she got arrested, she had a BAC of whatever it was, and that she pled guilty. That has absolutely nothing to do with whether or not the railroad was at fault. Now you're blaming, which is exactly what they did, blame the fault of the third party. And it would be just like, I know the court keeps saying, well, the jury decided it. Well, you put it in the wrong context. It would be like if I bought a Boiler Inspection Act claim for oil on a catwalk floor, and I have to sit there and say it's strict liability, but the railroad wants to come in and say, well, we're going to go ahead and argue the plaintiff wasn't keeping a careful lookout, and we want to diminish it. And then they come back with a verdict against me. It's the context you put it in. If you put somebody at fault. Mr. DuPont, you go even further than what we've been talking about here. The last thing that I talked to Mr. Jones about was the fact that you brought motions in London to say that he cannot put on any evidence that the sole proximate cause of this accident was the intoxicated driver. I did. You did. And that goes further, because in that context, speaking of context, you're saying that the defendant doesn't even have the right to contest your evidence that there was some evidence that the driver, the railroad driver, was at fault. You're bringing it before the trial. We're not even talking about at the time of jury instructions where the trial judge, you know, could say, well, there's some evidence here, or there's no evidence of sole proximate cause. I'm not going to let this instruction go back. Your position is that what you say your evidence is can't even be contested. Is that right? Yes. I am telling you, and it is my position, based on the United States Supreme Court and FILA, that a railroad defendant is not entitled to assert the negligence of a third party. It is not entitled to introduce evidence of a third party's negligence, and it is not. And at that point, that's before the trial. That's before anything is presented to the jury. Judge, we have evidence that the railroad employee switched lanes. That's evidence of negligence in our opinion, and, therefore, the defendant should be precluded. I mean, why don't you go further? You don't even – there's not even entitlement to cross-examination of your witnesses. Maybe that should be the motion to eliminate. No, Your Honor. Isn't this pretty far afield? No. No. I don't mean to argue with you, but, no, not at all, Your Honor. The question is simply can they put on evidence of a third party's negligence and then take the focus of what you're supposed to look at under FILA away from the – every Supreme Court case says it. This Court's bound by it. I'm sorry, but the Supreme Court says you have – But going back to the – I don't want to belabor this, but going back to the motion to eliminate, if we go back to the motion to eliminate, that really, to me, is the telltale sign of what your position is. What about in the case where the driver didn't switch lanes? What if the facts of this case were that the professional driver for the railroad was going straight down the street, going the speed limit, and was rear-ended by an intoxicated driver? What would your position be then? I wouldn't have taken the case. But I had evidence. You might not have taken the case. That would be my position. But I had evidence that the driver changed lanes. But the evidence is no evidence at all until there's a fact finder reviewing the evidence. It's just what you say the evidence is. And based on that, you're asking the trial judge, and the appellate court seems to have agreed, that they should not be able to put in evidence that there's sole proximate cause. You're right. They can't. I'm sorry. Okay. Your time has expired. I'm sorry. Thank you, Your Honor. No, I appreciate your passion. Thank you. I just want to make sure that the court understands, we have never taken the position that there should be an apportionment of fault in this case. We never did that. We never gave any instructions on the apportionment of fault. Isn't that Ayers? It says that you can't do that. Exactly. And so the misconstruence here, I think, is that it's not that you can't bring the apportionment in, but what you have to do, it's joint and several liability as opposed to. So you would have to pay all the damages and go after the other TORF visas. Exactly. And, Judge, if in this case the jury had found that Union Pacific was at fault, I would totally agree with Mr. DuPont that based upon the law, we cannot ask the jury to apportion fault. What we did is we were defending their allegations. We're refuting their evidence. And the jury agreed with us that there was no negligence on the part of Union Pacific Railroad, which is something contrary to workers' comp. The law is very clear. Congress created this law, and there's pros and cons for the plaintiff in an FLA case. Number one, first of all, he does, unlike comp, he has to prove negligence, and he has to prove the causation of his injuries. But the other side of the coin is he's not limited by schedules of workers' comp, and he's allowed to have juries decide the case. And a jury did decide this case. And the jury decided this case and rejected their claim. It's uncontradicted in every case they cite. And it's from the U.S. Supreme Court on down. It's in the law that they have to prove first negligence, and they have to prove the negligence was a cause in whole or in part. And those were precisely the instructions that were given to the jury in this case. This is plaintiff's instruction number 16B, which is 160.01, which is right out of the IPI. This one was not modified in any fashion. It says, at the time of the occurrence, there was in force a federal statute known as the Federal Employer's Liability Act. That act provided that whenever an employee of a railroad is injured while engaged in the course of his employment, the railroad shall be held liable in damages to the injured employee where the injury results in whole or in part from the negligence, from the negligence of any of the officers, agents, or other employees of the railroad. That is the standard instruction. That is the law, and he failed to do that. The instruction in this, the one that they're complaining about, which is Defendant's Exhibit 3, which is 12.04, which we modified to comply with that in whole and in part, take out approximate cause because Mr. DuPont talks about McBride, which was a recent U.S. Supreme Court decision. What McBride said is, in McBride, the defendant was trying to argue that we should be using the term approximate cause. All McBride did is they rejected that. They said in whole and part is the proper language, and we gave the proper language in these instructions. And so the bottom line is that this case was tried, and Mr. DuPont's theory in this case, and what he's just represented to you, is that if we would have had this van driving down the road, and let's say that van is driving, the speed limit is 60 miles an hour, and that van is driving 61 miles an hour. A plane or a piece of spaceship falls out of the sky, collapses on that van, and people are injured. The railroad has no defense because he submitted evidence that they were exceeding the speed limit by one mile an hour, and that's evidence of negligence, and there's no question for the jury to decide that the sole cause of the accident was something else. And that's what's so ludicrous about his position and the decision of the Illinois Appellate Court Fifth District. So we would ask you respectfully that you reverse the Fifth District Appellate Court and reinstate the jury's verdict that was rightly decided in this case. Thank you. Thank you. Case number 120438, Christopher Wardwell, which is the Union Pacific Railroad Company, will be taken under advisement as agenda number 19. Mr. Jones and Mr. DuPont, we thank you for your arguments today. We bid you good day. You're free to leave. And Mr. Marshall, the court stands adjourned.